(72 N. W. Rep. 1014.)

---

IOWA & DAKOTA LAND COMPANY *vs.* BARNES COUNTY.

Opinion filed October 29th, 1897.

**Tax Sale—Mistake of Officer—Recovery of Bid.**

> In 1888 the county treasurer of Barnes County sold the lands described in the complaint at a tax sale, for an alleged tax levied on the lands in 1887. The lands so sold were described upon the assessment roll, and also upon the tax duplicate delivered to the treasurer by the county clerk, by a system of arbitrary signs or symbols, which descriptions were, at a date long subsequent to said sale, held to be insufficient in law, and void, under a decision of this court. *Held*, that inasmuch as the defective descriptions of the land were placed upon the assessment roll and tax list of the county by other officials of the county, who were responsible for the descriptions, and by them delivered to the treasurer, it became the duty of the treasurer, as a ministerial officer, to sell the lands so described, upon which the tax was not paid, and that such sale, under the facts stated, was not a mistake or wrongful act of the treasurer, within the meaning of § 1629 of the Comp. Laws. No action will lie, upon such a state of facts, under said section, to recover the amount bid with interest, either against the county, or the county treasurer who made the sale.

Appeal from District Court, Barnes County; *Rose*, J.

Action by the Iowa & Dakota Land Company against Barnes County. Judgment for defendant, and plaintiff appeals.

Affirmed.

*Newman, Spalding & Phelps*, for appellant.

*Edward Winterer*, for respondent.

WALLIN. J. This action was tried in the District Court without a jury, and comes here for a trial anew, under § 5630 of the Rev. Codes. There was a judgment below of dismissal, with costs against the plaintiff. The facts which are decisive of the case

are undisputed.   Among other things, the complaint alleges that one Bensen was county treasurer of Barnes County in the year 1888, and, as such treasurer, sold the lands described in the complaint, at the annual tax sale of 1888, to one Bowdle, for alleged taxes levied against said land in the year 1887, and that Bowdle's claim against Barnes County arising on such sale has never been paid, but has been transferred to the plaintiff, and constitutes plaintiff's cause of action.   The theory of the plaintiff's action is that the county treasurer sold the lands, not only without legal authority, but sold them by his own mistake or wrongful act, and that in so doing the county became liable for the principal and interest on the amount bid at such sale, and the treasurer and his official bondsmen became ultimately liable to the county for such principal and interest, under the provisions of § 1629 of the Comp. Laws, which section was in force at the time of the sale. The plaintiff's theory of the tax sale in question is embodied in the following paragraph of its complaint:   "That said lands herein described were not assessed for taxation in the year 1887, and no taxes were levied thereon in that year; that in the year 1887 the auditor of said defendant, Barnes County, made out a tax list of the taxable lands in said county, which said tax list did not contain a list or description of said parcels of land hereinafter described, or of the lands for the alleged taxes on which either or any of the said parcels were so as aforesaid sold, and neither of said parcels of land was entered upon the tax list of said Barnes County for the year 1887."   After alleging that the auditor of the county made out a tax list in 1887, and a duplicate thereof, and that such duplicate list was properly authenticated and delivered to the treasurer, the complaint further states that said duplicate tax list "did not contain a list or description of the pieces or parcels of land hereinafter described, or either of them."   The lands referred to are described in the complaint in this action properly, and in the usual way.   Issue was joined upon said averments of the complaint, and at the trial a stipulation embracing an agreed state of facts was brought up on the record, which

is substantially as follows: First. That the treasurer of Barnes county, at the tax sale in 1888, as treasurer, sold the lands described in the complaint, for taxes claimed to have been levied thereon in the year 1887, to said Bowdle, for the several sums as stated in the complaint; that tax certificates issued on said sales, and were delivered to Bowdle by said treasurer; that the sums paid the treasurer on such sales have never been repaid to said Bowdle or to the plaintiff; and that Bowdle's claim has been transferred to the plaintiff. Second. That prior to said tax sale said treasurer gave the notice cf said tax sale prescribed by law, and that, among other things, said notice embodied a list of the lands in question, and a description thereof. That the asssement rolls, tax list, and duplicate tax list of Barnes county contained no other description of the lands described in the compaint for the years in question than the description set forth in the stipulation aforesaid, which description is found in Exhibit A of the stipulation, and constitutes the only description of the lands found in the assessment roll, tax list, and duplicate tax list of Barnes county for the years in question. It will be unnecessary to set out Exhibit A in full. One description will show the essential characteristics of all. The first description in said Exhibit A is as follows:

| Description. | Section. | Township. | Range. |
|---|---|---|---|
| N ² of S. E ⁴ | 25 | 138 | 56 |

Plaintiff's counsel declares in his brief—and the fact is conceded —that the descriptions on the county records (*i. e.* on the tax roll, tax list, and duplicate tax list) are of the same character as those considered and held to be insufficient by this court in *Power* v. *Larabee*, 2 N. D. 141, 49 N. W. Rep. 724, and *Power* v. *Bowdle*, 3 N. D. 107, 54 N. W. Rep. 404. From this brief statement of the issues and facts in the record, it appears that this court will not be embarrassed by the presence in the record of conflicting evidence or disputed facts. It is agreed that the county treasurer sold the lands described in the complaint for alleged taxes, and for the sums alleged and set opposite such

description, and that said lands were not otherwise described on the tax records of the county at the time in question than as above set out, and that said records, one and all, contained an attempt to describe the land as above stated. But counsel, while agreeing as to the concrete facts, are wide asunder in their theories. Plaintiff's counsel insists that this court having declared in the two cases cited that just such descriptions as those existing and found upon the tax records in this case at the time of the sale were insufficient and wholly void as descriptions of land, and hence could not authorize either an assesment, levy, or tax sale, therefore the same kind of descriptions which exist in this case are not only void, but they are so void and so utterly worthless as descriptions that the records upon which the sales in question were made are, for all legal purposes, as if absolutely blank, and devoid of any attempt to describe the lands. This extreme view is combated by counsel of the defendant; his contention being that the symbol-writing descriptions found upon the records in this case, as in all the cases, are not blanks, in fact, but are attempts, though abortive, to describe the lands. In disposing of the case, it must be presumed that in this jurisdiction, as in many others, it is firmly settled, in the absence of statutory provision giving indemnity to tax-sale purchasers, that such purchasers, under the rule *caveat emptor*, take tax titles with full notice of any and all defeats in the tax proceedings which may render their titles voidable or void, and that, if the titles so acquired are set aside by the courts, the purchasers are remediless. This rule has the support of an overwhelming array of authority. It was announced by the Supreme Court of the Territory of Dakota, and this court has repeatedly recognized and applied the same rule. *McLauren* v. *City of Grand Forks*, 6 Dak. 397, 43 N. W. Rep. 710; *Budge* v. *City of Grand Forks*, 1 N. D. 309, 47 N. W. Rep. 390; *Tyler* v. *Cass Co.*, 1 N. D. 369, 48 N. W. Rep. 232. Under the doctrine of these cases, plaintiff became chargeable with nctice of the defects in the descriptions of the lands in question,—such defects being obvious, and appearing upon all the tax records, at

the time that the lands were sold to Bowdle; hence neither Bowdle or his assignee, under the rule *caveat emptor*, could recover the amount of his bids of the county. This rule is conceded by plaintiff's counsel to be settled in this state, but counsel's claim is that the county is primarily liable, under § 1629 of the Comp. Laws, which section was in force at the time of the sale, and which reads: "When by mistake or wrongful act of the treasurer land has been sold on which no tax was due at the time, the county is to save the purchaser harmless by paying him the amount of principal and interest at the rate of twelve per cent. per annum from the date of sale, and the treasurer and his sureties shall be liable for the amount to the county on his bond or the purchaser may recover the same directly from the treasurer."

It will be observed that if the plaintiff can, under this statute, recover against the county, in this action, the amount paid by him at the tax sale, with 12 per cent. interest thereon from the date of sale, under the same statute the county may recover over against the treasurer and his official bondsmen, so that ultimately the treasurer or his bondsmen must repay the amount out of their private funds. The question involved here, therefore, is of the gravest importance, especially to all persons who held the office of county treasurer while the statute was in force, and to their official bondsmen as well. The question presented for the determination of this court is whether, under said section of the statute, and upon the facts disclosed in this case, a purchaser at a tax sale can recover of the county the amount of his bid, with interest. This court has had occasion to consider and elaborately comment upon the section of the statute in question in another case. See *Tyler* v. *Cass Co.*, 1 N. D. 369, 48 N. W. Rep. 232. In that case the land which was sold was properly described upon the tax rolls, but the title of the lands, when sold by the treasurer, was vested in the United States, and for this reason the tax sale was held to be void. An action was brought against the county by the purchaser at such tax sale to recover the amount paid for the land, with interest, and the plaintiff sought to recover under

the same statute invoked by the plaintiff in this action. The case is instructive, and contains an exhaustive consideration of the statute in all of its bearings. True, the infirmity in the tax sale which defeated the same in the Tyler case was different from that existing in the sale we are considering in the case at bar. In the Tyler case it was conceded that the county officials had no right whatever to tax the lands, or place the lands on the tax rolls of the county, because the land belonged to the United States government. It was strenuously contended there, in plaintiff's behalf, that the plaintiff was entitled to recover under this statute, because the land was in fact unlawfully sold by the treasurer to the plaintiff at a time when it belonged to the government, and that such sale must have been the result either of the "mistake or wrongful act of the treasurer." This view of the statute was not sustained by this court; the court holding, in effect, that, while the tax sale was illegal and void, it did not occur on account of either the mistake or wrongful act of the treasurer, but was brought about wholly by the mistake or wrongful act of other county officials, who are directly chargeable with the duty of assessing the lands of the county for taxation, and with preparing the tax list and furnishing the treasurer with a duplicate of such list as his guide in collecting taxes, and selling property described in his list, upon which taxes became delinquent. Upon this view of the statute, and cognate statutes, the court held that the sale of government lands, while illegal, was not the result of any mistake or wrongful act of the treasurer, but was the mistake of other officers, and, hence, that the purchaser could not recover, under the statute. On principle, we are unable to distinguish the Tyler case from that under consideration. True, the particular facts which rendered the tax sale illelag are widely different. In the case at bar the lands were liable to taxation, and hence could be sold at tax sale to satisfy any tax lawfully assessed against them. The vice of the tax in the case at bar consists in a defective description of the lands upon the tax rolls of the county. At and prior to the sale the same kind of descriptions were used in

Barnes County, and in some other counties in the then Territory of Dakota. Referring to this mode of describing realty, this court in *Power* v. *Bowdle*, 3 N. D. 128, 54 N. W. Rep. 411, said: "Those who have close relations with the local land officers and with such of the county officers as have copied and adopted the symbol writing from the land officers, are indeed strongly impressed with the idea that all of the people understand and use this mode of describing land. We cannot come to the same conclusion. We think symbol writing in tax records has already disappeared, and is no longer employed in county offices in this state; and our belief is strong that when the public land has been disposed of, and the local land officers have performed their limited and temporary functions, and have removed further west, it will be found that symbol writing in describing realty will have failed to become ingrafted upon the vernacular language. We feel justified in our conclusion from our observation and experience in the older states of the West." For reasons stated in the opinion from which we have quoted, as well as those in other cases where similar descriptions were considered and condemned, this court held that such descriptions were radically defective and insufficient in law as descriptions of land for the purpose of assessment. We still adhere to the soundness of that holding. But while, upon authority and upon grounds of public policy, such descriptions were, from our point of view, insufficient in law to support a tax levied thereunder, the fact nevertheless stands out that each and every parcel of the land sold in those earlier cases, as in the case at bar, was attempted to be described, and was in fact described, on all the tax records of the county, in the manner indicated, *i. e.* by symbol writing. The case we are discussing is a case of a tax sale of lands which are inadequately described upon the tax records, and does not resemble a case where lands are not attempted to be described upon the records or listed at all. If a county treasurer should willfully sell a tract of land for alleged delinquent taxes, which was not in any manner attempted to be described, a widely-different question would be presented. We

need not speculate upon the legal results of the case supposed, as no such case is presented in this record. The treasurer in this case sold the land which was attempted to be described, and which was in fact described, in accordance with the mode of description which we have designated. It was not until long subsequent to the tax sale that this court judicially determined that such descriptions as were used in describing the lands sold by the treasurer in this case were insufficient in law to support a tax. Moreover, the descriptions under which the lands were sold were not manufactured and placed upon the duplicate lists, by mistake, or wrongfully, or at all, by the county treasurer; but, as we have seen, the treasurer took from other county officials, who were responsible for the descriptions and for the assessment, the duplicate list or tax warrant containing the descriptions of the land in question. Under such circumstances, we are of the opinion that it was neither a mistake nor a wrongful act upon the part of the treasurer; within the meaning of the statute, to sell the lands at tax sale by the descriptions found upon the tax duplicate or warrant, which was made out and furnished him by other officers who were made directly responsible for preparing and describing the lands upon such duplicate list or warrant. It was the province of other officials to resolve all doubts, and place lands upon the rolls which were taxable, and to determine, upon their own responsibility, the kind and character of the descriptions by which such lands were to be identified. With this duty the county treasurer had nothing whatever to do. Hence we conclude that the sale based upon the descriptions in the duplicate was not a mistake or wrongful act upon the part of the treasurer, and hence such sale was not within the purview of the section in question. The statute was not a general statute indemnifying all purchasers at tax sales whose titles fail on account of defects of procedure. Unless the defects in procedure are traceable to some mistake or wrongful act of the treasurer himself, no recovery is possible, under the statute. With the policy of the statute we have nothing to do.

The judgment below will be affirmed. All the judges concurring.